IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CORNEL ROGERS          :
                       :
        v.             :
                       :   Civil Action No. CCB-09-3397
CONMED, INC.           :
                       :
                       :

...o0o...

**MEMORANDUM**

Now pending before the court is a motion to dismiss filed by defendant Conmed, Inc. ("Conmed"). Plaintiff Cornel Rogers has sued Conmed alleging age and race discrimination, as well as retaliation, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, 42 U.S.C. § 1981, and Md. Code. Ann, Art. 49B § 11B.[1] The issues in this case have been fully briefed and no hearing is necessary. For the reasons stated below, the defendant's motion to dismiss will be granted in part and denied in part.

**BACKGROUND**

Mr. Rogers is a 61-year-old African American man who worked at the Baltimore Detention Center ("BDC") as a medical employee for approximately 13 years. On September 1, 2006, Conmed took over the medical services at the BDC and hired Mr. Rogers as a physician's assistant. Mr. Rogers was the first physician's assistant hired by Conmed at the BDC location and his wage was set at $39.11 per hour. Conmed hired Cathleen Russell as a physician's assistant on October 30, 3006, but paid her $45 per hour. On November 30, 2006, Conmed hired Yvonne Stewart for the

---
[1] As of October 1, 2007, this section provided for a private right of action under Maryland law. In 2009, this section was repealed and replaced by the substantively similar Md. Code Ann. State Gov't § 20-1013. *See* 2009 Md. Laws Ch. 120.

same position and paid her $50 per hour. John McAtree was hired as a physician's assistant on June 18, 2007 and paid $50 per hour. Conmed next hired Edwin Gomer for the same position on October 19, 2007 and paid him $45 per hour. Finally, Mohammed Hashemi and Francis Oluwo were both hired as physician's assistants on November 19, 2007 and paid $45 per hour. According to Mr. Rogers, all of these employees were younger than him and/or non-African American. In addition, Mr. Rogers claims that all were less experienced than him and worked more desirable shifts.[2]

Conmed never increased Mr. Rogers's salary, despite his complaints of discrimination. In early December 2007, Mr. Rogers first contacted the Equal Employment Opportunity Commission ("EEOC") about filing a charge of discrimination. Mr. Rogers filled out his formal EEOC complaint on March 27, 2008. On April 14, 2008, Mr. Rogers quit his job with Conmed. He claims that his resignation constituted a constructive discharge because of the discrimination and retaliation he suffered during his employment. On April 15, 2008, Mr. Rogers signed his previously completed EEOC charge and filed it with the EEOC on April 21, 2008. The EEOC complaint[3] states that he was discriminated against based on race and age because he was paid less than Ms. Russell, Ms. Stewart, and Mr. McAtree.[4] (*See* Def.'s Mot. to Dismiss Ex. 1.) The EEOC charge does not include any allegations of retaliation or constructive discharge.

On October 21, 2008, Mr. Rogers filed suit in the Circuit Court for Baltimore County, Maryland, alleging pay discrimination and constructive discharge on the basis of race and age under Md. Code. Ann, Art. 49B § 11B. At some point, the circuit court judge dismissed the complaint

---

[2] Mr. Rogers worked the night shift, which he claims was the least desirable shift and thus should have resulted in a higher rate of pay.
[3] Mr. Rogers incorporated his EEOC charge into his complaint by reference and the court may therefore consider it on this motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference").
[4] In the EEOC charge, these individuals are listed as "Katina Russell," "Yvonne Stewart," and "John Macatee," but the court will presume these are the same individuals described in this lawsuit.

because, according to Mr. Rogers, the complaint did not allege that the pay discrimination was a continuing violation and that each paycheck constituted a separate paycheck. Mr. Rogers was granted leave to amend his complaint. On February 13, 2009, the EEOC mailed Mr. Rogers a letter informing him that his EEOC charge had been dismissed and that he now had the right to bring suit under Title VII and ADEA. Subsequently, on November 24, 2009, Mr. Rogers filed an amended complaint in state court, adding additional causes of action under Title VII, ADEA, and 42 U.S.C. § 1981. In addition, the amended complaint included claims of retaliation, alleging that Conmed had retaliated against Mr. Rogers because of his internal complaints of discrimination and his EEOC complaint, and that this retaliation led to Mr. Rogers's constructive discharge.

Conmed removed the case to federal court on December 18, 2009. Conmed now argues that Mr. Rogers's claims arising under Title VII, ADEA, and Md. Code. Ann, Art. 49B § 11B must be dismissed.[5] Conmed first argues that Mr. Rogers's Title VII and ADEA claims are time-barred because he failed to file them within 90 days of receiving a right-to-sue letter from the EEOC. Second, Conmed contends that Mr. Rogers failed to file a timely complaint with the Maryland Commission on Human Relations ("MCHR") because more than six months passed between the date he was hired and the date he filed an EEOC charge. In the alternative, Conmed argues that the state law claims must be dismissed because Md. Code. Ann, Art. 49B § 11B does not provide a private right of action for discriminatory acts occurring prior to October 1, 2007 and § 11B claims must be filed within two years of an alleged discriminatory act. Finally, Conmed argues that Mr. Rogers failed to exhaust his administrative remedies with respect to his retaliation and constructive discharge claims by failing to raise them with any local, state, or federal administrative agency. Each argument will be addressed in turn.

---

[5] Conmed does not move to dismiss Mr. Rogers's § 1981 claims.

## **ANALYSIS**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

*Title VII and ADEA Claims*

Conmed argues that Mr. Rogers's Title VII and ADEA claims must be dismissed because they are time-barred. Mr. Rogers had 90 days from receipt of his right-to-sue letter from the EEOC to pursue causes of action based on Title VII and ADEA. *See* 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1). The EEOC issued Mr. Rogers a right-to-sue letter on February 13, 2009, yet Mr. Rogers did not bring his Title VII and ADEA claims until he filed his amended complaint on November 24, 2009, well over the 90-day time limit. Mr. Rogers argues, however, that because his ADEA and Title VII claims relate back to his original October 21, 2008 filing, his claims are timely under Fed. R. Civ. P. 15(c). Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when ... (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

Yet Conmed argues that the Federal Rules of Civil Procedure do not apply here because both the filing of the original and amended complaints occurred in state court, before the action was removed. *See* Fed. R. Civ. P. 81(c)(stating that the Federal Rules of Civil Procedure "apply to a civil action *after* it is removed from a state court") (emphasis added). Nevertheless, the Fourth Circuit has applied Fed. R. Civ. P. 15(c) in a case in which both the original and amended complaints were filed in state court prior to removal to federal court. *See Grattan v. Burnett*, 710 F.2d 160, 161, 163 (4th Cir. 1983). In *Grattan*, the plaintiffs filed charges of discrimination on the basis of race and sex with the EEOC and then filed suit in state court while those charges were pending. *Id.* at 161. Their original complaint alleged that their dismissals from employment were arbitrary and capricious, but did not allege race or sex discrimination specifically. *Id.* The plaintiffs

5

then amended their complaint more than four years later to include claims of race and sex discrimination. *Id.* The defendants subsequently removed the case to federal court and moved to dismiss. *Id.* On appeal, the Fourth Circuit considered whether the plaintiffs had brought their state law race and sex discrimination claims within Maryland's three-year statute of limitations. *Id.* at 163. The court, applying Fed. R. Civ. P. 15(c), held that these claims related back to the allegations in the original complaint and, therefore, were not time-barred.

Following the Fourth's Circuit's reasoning in *Grattan*, this court will apply Fed. R. Civ. P. 15(c) in the present case. The Title VII and ADEA claims in Mr. Rogers's amended complaint will relate back to the original complaint if two criteria are met: (1) there is a "factual nexus between the amendment and the original complaint"; and (2) Conmed "had notice of the claim[s] and will not be prejudiced by the amendment." *Id.*

There is clearly a factual nexus in this case between the Title VII and ADEA claims in the amended complaint and the state law race and age discrimination claims in the original complaint, as both sets of claims are based on the same facts. In addition, as in *Grattan*, the defendant had notice of the federal claims because Mr. Rogers had filed an EEOC charge before initiating this lawsuit. *See id.* (finding that the defendants were not prejudiced by the new claims in the amended complaint because the plaintiffs "complained of race and sex discrimination in complaints filed with the EEOC in June 1976, [and thus] defendants were bound to have known of them"). Furthermore, even if Conmed had not learned of the federal discrimination claims through the EEOC charge, the company was on notice of the allegations supporting the claim because they are identical to those

described in Mr. Rogers's state law discrimination claims. Therefore, Mr. Rogers's Title VII and ADEA claims relate back to his original complaint[6] and are timely.[7]

*State Law Age and Race Discrimination Claims*

Conmed's arguments with respect to the timeliness of Mr. Rogers's age and race discrimination claims brought under Md. Code. Ann, Art. 49B § 11B all hinge on whether the discriminatory act is limited to the date on which the allegedly discriminatory compensation decision was adopted, the date of hire in this case, or whether each paycheck Mr. Rogers received until his resignation constitutes a discrete discriminatory act. According to Conmed, the court must apply the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) because the federal Lilly Ledbetter Fair Pay Act of 2009 ("federal Ledbetter Act")[8] did not alter state anti-discrimination law and the Maryland legislature did not apply the state Lilly Ledbetter Civil Rights Restoration Act of 2009 ("state Ledbetter Act")[9], effective October 1, 2009, retroactively. *See* federal Ledbetter Act, 123 Stat. 5 (2009); state Ledbetter Act, 2009 Md. Laws Chs. 56-57. In *Ledbetter*, the Supreme Court held that the period for filing an EEOC charge alleging pay discrimination begins when the employer's "pay-setting decision" occurs, not each time the

---

[6] The defendants argue that because Mr. Rogers's original complaint was untimely, there is no valid pleading to which the Title VII and ADEA claims could relate back. As discussed below, the court finds the claims raised in the original complaint to be timely.

[7] Mr. Rogers's Title VII and ADEA claims would have been timely on October 21, 2008, the date on which he filed his original complaint, because more than 180 days had passed since he filed his charge of discrimination with the EEOC. *See* 29 U.S.C. § 626(d)(1) (permitting an ADEA plaintiff to file suit 60 days after a timely EEOC charge has been filed); 42 U.S.C. § 2000e-5(f)(1) (permitting Title VII plaintiff to file suit if he has filed an EEOC charge and 180 days have transpired since the date of filing with no action taken by the EEOC).

[8] Under the federal Ledbetter Act, "an unlawful employment practice occurs, with respect to discrimination in compensation in violation of [Title VII], when ... an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 123 Stat. 5 (2009)

[9] Under the state Ledbetter Act, "an unlawful employment practice occurs, with respect to discrimination in compensation in violation of [Md. Code Ann., State Gov't § 20-607] when: ... (3) an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting wholly or partly from the discriminatory compensation decision or other practice." 2009 Md. Laws Chs. 56-57.

employee receives a discriminatory paycheck. *See* 550 U.S. at 621, 632. Yet no Maryland court has ever adopted, or even cited, *Ledbetter*. Further, when the Maryland legislature enacted the final version of the state Ledbetter Act, it was aware that the federal Ledbetter Act had already been enacted and applied retroactively to May 2007. Thus it was unnecessary for the Maryland legislature to declare that the state Ledbetter Act would apply retroactively.

Given the lack of state or federal case law analyzing whether Maryland anti-discrimination law recognizes a continuing violation theory with respect to pay discrimination, the Maryland legislature's recent enactment of the state Ledbetter Act is highly persuasive. Under the state Ledbetter Act, each paycheck Mr. Rogers received reflecting pay discrimination constituted an unlawful employment practice. *See* 2009 Md. Laws Chs. 56-57. Therefore, because Conmed paid Mr. Rogers until his resignation and Mr. Rogers filed his EEOC charge[10] one week after resigning, Conmed's untimeliness arguments fail. Less than six months passed between Mr. Rogers's final paycheck and the date on which he filed his EEOC complaint, as required under Md. Code. Ann, Art. 49B § 9A. In addition, pursuant to Md. Code. Ann, Art. 49B § 11B, Mr. Rogers received his last paycheck within two years of filing this lawsuit and after October 1, 2007. Therefore, Mr. Rogers's state law discrimination claims are not time-barred and will survive this motion to dismiss.

*Constructive Discharge and Retaliation Claims*

Mr. Rogers claims that he was constructively discharged on April 14, 2008, yet he did not allege constructive discharge on the EEOC charge he filed on April 21, 2008. Neither did he list any allegation of retaliation. There is also no indication that the EEOC was aware of or had investigated

---

[10] Conmed concedes that Mr. Rogers's EEOC filing satisfies the requirement of notice to the MCHR because he designated the MCHR as the responsible state agency on his EEOC complaint. (*See* Def.'s Mot. to Dismiss at 10 n.6 & Ex. 1.)

any retaliation or constructive discharge claim. Instead, it appears Conmed first learned of these claims through this lawsuit. A plaintiff asserting claims under Title VII and ADEA must exhaust his administrative remedies before suing in court by filing a charge of discrimination with the EEOC. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). If a plaintiff has not referenced his retaliation claim in his EEOC charge, the claim has not been properly exhausted. *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999).

As an exception to the rule, the Fourth Circuit has held that claims of retaliation for actions that follow the filing of an EEOC charge are reasonably related to the original complaint and thus may be raised for the first time in court. *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *see also Jones*, 551 F.3d at 303 (noting that the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) did not affect the validity of *Nealon*). Yet when a plaintiff's claims of discrimination could have been raised in his EEOC charge, this exception does not apply. *See Riley v. Technical Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1460 (D. Md. 1995); *see also Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir. 1991) (noting that "[r]etaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint"). If a plaintiff experiences retaliation and constructive discharge before filing an EEOC complaint, there is little reason not to require him to exhaust his claims by including them in his EEOC charge. Therefore, the normal rules of exhaustion must apply to claims of

discrimination that predate the filing of an EEOC charge. Although Mr. Rogers argues that the retaliation and constructive discharge occurred after his EEOC form had been filled out, he concedes that both allegations occurred before signing the form and filing it with the EEOC. Thus Mr. Rogers still had an opportunity to add allegations to his complaint when he signed and filed it with the EEOC. His failure to do so prevents him from raising these claims for the first time in court. Accordingly, Mr. Rogers's retaliation and constructive discharge claims will be dismissed.[11]

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss will be granted in part and denied in part. A separate Order follows.

August 3, 2010 /s/
Date Catherine C. Blake
United States District Judge

---

[11] Even if Mr. Rogers had exhausted his retaliation claim, he has not alleged any facts that demonstrate retaliatory conduct by Conmed. Although the alleged pay discrimination presumably forms the basis of Mr. Rogers's constructive discharge claim, there is no reason to believe, based upon Mr. Rogers's complaint, that it also constituted retaliation.